UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kimberly Force,
        Claimant

        v.                                  Civil No. 05-cv-296-SM
                                            Opinion No. 2006 DNH 055
Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
        Defendant


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Kimberly Force moves to
reverse the Commissioner's decision denying her application for
Social Security Disability Insurance Benefits under Title II of
the Social Security Act, 42 U.S.C. § 423 (the "Act").  She says
the Administrative Law Judge ("ALJ") erred in concluding that she
was not disabled prior to the expiration of her insured status
and moves the court to reverse the ALJ's decision or, in the
alternative, remand the matter for further proceedings.  The
Commissioner objects and moves for an order affirming her
decision denying claimant's application for disability benefits.

**Factual Background**

I.   Procedural History.

On October 24, 2003, claimant filed an application for disability insurance benefits under Title II of the Act, alleging that she had been unable to work since April 7, 2000.[1]  Her application was denied and she requested an administrative hearing before an ALJ.  On March 8, 2005, claimant appeared with her attorney and gave testimony before the ALJ, who considered claimant's application de novo.  On April 18, 2005, the ALJ issued his decision, concluding that, prior to the date on which her insured status expired (December 31, 2000), claimant retained the residual functional capacity to engage in light work and could, therefore, perform her past relevant work as a daycare provider.  Accordingly, he determined that claimant was not disabled, as that term is used in the Act.

Claimant then sought review of the ALJ's decision by the Appeals Council.  On July 8, 2005, however, the Appeals Council denied her request, thereby rendering the ALJ's decision a final determination of the Commissioner, subject to judicial review.

---

[1]   Although claimant originally said she became disabled on January 1, 1995, she subsequently amended that claim and asserted an onset date of April 7, 2000.  See Administrative Record ("Admin. Rec.") at 36 and 255.

On August 26, 2005, claimant filed an action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act.  Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 7).  The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 8).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 9), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  <u>Properly Supported Findings by the ALJ are Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

3

cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence.[2] See 42 U.S.C. §§ 405(g); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position. See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). See also Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222–23 (1st Cir. 1981).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It

---

[2]     Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

is "the responsibility of the [Commissioner] to determine issues
of credibility and to draw inferences from the record evidence.
Indeed, the resolution of conflicts in the evidence is for the
[Commissioner], not the courts."  <u>Irlanda Ortiz</u>, 955 F.2d at 769
(citation omitted).  Accordingly, the court will give deference
to the ALJ's credibility determinations, particularly where those
determinations are supported by specific findings.  <u>See</u>
<u>Frustaglia v. Secretary of Health & Human Services</u>, 829 F.2d 192,
195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health &</u>
<u>Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  <u>The Parties' Respective Burdens</u>.

An individual seeking Social Security disability benefits is
disabled under the Act if he or she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or has lasted or can be expected to last for a
continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The Act places a heavy initial burden on the
claimant to establish the existence of a disabling impairment.
<u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146–47 (1987); <u>Santiago v.</u>
<u>Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir.
1991).  To satisfy that burden, the claimant must prove that her

impairment prevents her from performing her former type of work.
See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7
(1st Cir. 1982)).  Nevertheless, the claimant is not required to
establish a doubt-free claim.  The initial burden is satisfied by
the usual civil standard: a "preponderance of the evidence."  See
Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

Provided the claimant has shown an inability to perform her
previous work, the burden shifts to the Commissioner to show that
there are other jobs in the national economy that she can
perform.  See Vazquez v. Secretary of Health & Human Services,
683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the
existence of other jobs that the claimant can perform, then the
overall burden to demonstrate disability remains with the
claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st
Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H.
1982).

In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or

other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

> (1)   whether the claimant is engaged in substantial gainful activity;
>
> (2)   whether the claimant has a severe impairment;
>
> (3)   whether the impairment meets or equals a listed impairment;
>
> (4)   whether the impairment prevents the claimant from performing past relevant work; and
>
> (5)   whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm her decision.

## Discussion

I.   <u>Background — The ALJ's Findings</u>.

In concluding that Ms. Force was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520.  Accordingly, he first determined that claimant had not been engaged in substantial gainful activity since her alleged onset of disability — April 7, 2000.  Next, he concluded that claimant has "chronic knee pain with degenerative arthritis and supraventricular tachycardia, impairments that are 'severe' within the meaning of the Regulations."  Admin. Rec. at 18. Nevertheless, the ALJ determined that those impairments did not, either alone or in combination, meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  <u>Id</u>.

The ALJ next concluded that, prior to the expiration of her insured status, claimant retained the residual functional capacity ("RFC") to perform the exertional demands of light

8

work.[3]  Based upon that finding, at the fourth step of the
sequential analysis the ALJ concluded that claimant could return
to her past relevant work as a daycare provider.  Consequently,
he determined that claimant was not "disabled," as that term is
defined in the Act, on the date her insured status expired.

II.  Claimant's Residual Functional Capacity.

        In support of her motion to reverse the decision of the
Commissioner, claimant first asserts that the ALJ erred in
determining that she retained the RFC to perform at least light
work.  Specifically, she says: (1) the ALJ improperly determined
her RFC based solely on the bare medical record (which is not
permitted); (2) the ALJ improperly inferred that claimant had the
ability to perform light work from the absence of any work-
related restrictions in her medical records; and (3) the ALJ's

---

[3]     "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
Assessing Residual Functional Capacity in Initial Claims, 1996 WL
374184 at *2 (July 2, 1996) (citation omitted).

RFC determination conflicts with the "Medical Assessment of Ability to Do Work-Related Activities" prepared by Dr. Douglas Taylor, which indicates claimant is capable of performing less than the full range of sedentary work.  None of those points is, however, sufficiently meritorious to undermine the ALJ's decision.

First, Dr. Taylor's assessment of claimant's ability to perform work-related activities was prepared in March of 2005 – more than four years after claimant's insured status expired.  Admin. Rec. at 242-46.  And, that report does not purport to be a retrospective assessment of claimant's abilities either at the time of her alleged onset of disability or when her insured status expired.  Thus, it was of little probative value on the question before the ALJ: whether claimant was disabled on or before December 31, 2000.

On the other hand, a non-examining state agency physician, Dr. Scott Fifield, opined that from January 1, 1995, through the expiration of her insured status on December 31, 2000, claimant retained the RFC to lift 20 pounds occasionally, lift 10 pounds frequently, stand and/or walk for about 6 hours in an 8-hour workday, sit (with normal breaks) for about 6 hours in an 8-hour

10

workday, push/pull with no limitations, and climb, balance,
kneel, crouch, and crawl occasionally.  He also concluded that,
during the relevant period, claimant suffered from no
manipulative, visual, communicative, or environmental
limitations.  Admin. Rec. at 68-75.  The ALJ's assessment of
claimant's RFC is entirely consistent with the opinions and
conclusions of the non-examining state agency physician, Dr.
Fifield.  See generally 20 C.F.R. § 404.1527(f); SSR 96-6p,
Consideration of Administrative Findings of Fact by State Agency
Medical and Psychological Consultants, 1996 WL 374180 (July 2,
1996).  Thus, claimant is not correct in asserting that the ALJ
improperly determined her RFC based on a bare medical record.
See generally Gordils v. Secretary of Health & Human Services,
921 F.2d 327, 329 (1st Cir. 1990).

     Additional evidence in the record also lends substantial
support to the ALJ's determination of claimant's RFC.  Among
other things, on May 19, 1997, claimant's treating physician, Dr.
Yannopoulos, acknowledged her right knee pain, but prescribed
only anti-inflammatory medication and counseled claimant to begin
a "gentle exercise program."  Subsequently, on April 27, 1998,
Dr. Yannopoulos again urged claimant "increase her activity
level."  At a minimum, Dr. Yannopoulos's recommendations imply

11

that claimant was capable of performing at least some work-
related activities and/or that her complaints of disabling pain
were somewhat overstated – at least as they related to the period
of time relevant to this case.  See, e.g., Kovalcik v. Secretary
of Health & Human Services, 2003 WL 22937774 at *11 (D. Del.
Sept. 29, 2003) ("Plaintiff's treating physician continually
recommended that Plaintiff engage in an exercise program as a way
to treat her condition, thereby suggesting that Plaintiff's pain
was not as debilitating as she now alleges.").

     Moreover, as the ALJ pointed out, despite alleging an onset
date of April 7, 2000, claimant did not seek any treatment from
her primary care physician, Dr. Yannopoulos, between April of
2000 and November of 2001.  While claimant points out that she
was traveling between Connecticut (where Dr. Yannopoulos was
located) and the Washington D.C. area (where she says she did not
have access to medical treatment), that does not explain why she
did not seek treatment from Dr. Yannopoulos during those periods
of time when she was in Connecticut.  The ALJ is entitled to rely
on such "gaps" in claimant's treatment record in assessing
claimant's credibility and reaching his disability determination.
See, e.g., Irlanda Ortiz, 955 F.2d at 769.  See also Mickles v.
Secretary of Health & Human Services, 29 F.3d 918, 930 (4th Cir.

1994) ("an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility.").

Finally, as the ALJ again noted, nothing in claimant's treatment records suggests that any examining or treating physician ever limited claimant's activity level prior to her date last insured, and none prescribed more than mild analgesics and anti-inflammatories for the pain and swelling in her knee. And, during the relevant temporal period, while Dr. Yannopoulos often acknowledged claimant's right knee pain, he also repeatedly stated that she was tolerating that pain well with the relatively mild medications that he had prescribed.

In summary, then, the court concludes that claimant's assertions of error are insufficient to undermine the ALJ's disability determination and that there is substantial evidence in the record to support the ALJ's conclusion that, prior to the expiration of her insured status, claimant retained the RFC to perform light work. See generally 20 C.F.R. § 404.1545. See also SSR 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996).

13

III. <u>Claimant's Subjective Complaints of Disabling Pain</u>.

Next, claimant asserts that the ALJ failed to adequately discuss the basis for his decision to discount her subjective complaints of disabling pain.  As part of the process of determining a claimant's RFC, an ALJ must review the medical evidence regarding the claimant's physical limitations as well as her own description of those physical limitations, including her subjective complaints of pain.  <u>See</u> <u>Manso-Pizarro v. Secretary of Health & Human Services</u>, 76 F.3d 15, 17 (1st Cir. 1996).  When a claimant has demonstrated that she suffers from an impairment that could reasonably be expected to produce the pain or side effects she alleges, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which those symptoms restrict her ability to do basic work activities.

> [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  This includes medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by the treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual . . ..

14

> In recognition of the fact that an individual's
> symptoms can sometimes suggest a greater level of
> severity of impairment than can be shown by the
> objective medical evidence alone, 20 C.F.R. 404.1529(c)
> and 416.929(c) describe the kinds of evidence,
> including the factors below, that the adjudicator must
> consider in addition to the objective medical evidence
> when assessing the credibility of an individuals'
> statements.

SSR 96-7p, <u>Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 374186 (July 2, 1996).  Those factors include the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type dosage, effectiveness, and side effects of any medication the claimant takes (or has taken) to alleviate pain or other symptoms; and any measures other than medication that the claimant receives (or has received) for relief of pain or other symptoms.  <u>Id</u>.  <u>See also</u> <u>Avery</u>, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3).

It is, however, the ALJ's role to assess the credibility of claimant's asserted inability to work in light of the medical record, to weigh the findings and opinions of both "treating sources" and other doctors who have examined her and/or reviewed her medical records, and to consider the other relevant factors

15

identified by the regulations and applicable case law.  Part of
his credibility determination necessarily involves an assessment
of a claimant's demeanor, appearance, and general
"believability."  Accordingly, if properly supported, the ALJ's
credibility determination is entitled to substantial deference
from this court.

     Here, in reaching the conclusion that claimant's testimony
concerning the disabling nature of her impairments was not
entirely credible, the ALJ considered, among other things, the
fact that although claimant sought treatment in 1997 and 1998 for
knee pain and complained of discomfort when climbing stairs, she
was prescribed only an anti-inflammatory medication and
instructed to engage in gentle exercise.  Later, in 1998, when
claimant again complained of knee pain and reported difficulty
squatting and climbing, her physician again recommended that she
make an effort to increase her activity level.  Finally, the ALJ
noted claimant's treatment for knee pain in April of 2000, after
she twisted and sprained her knee.  While X-rays of claimant's
knee revealed mild degenerative changes, she was discharged with
instructions to elevate her knee, apply ice, and use crutches and
a knee immobilizer until the sprain had healed.

As the ALJ correctly observed, there were no other medical records during the relevant time period relating to claimant's knee pain.  And, those that did exist, suggest that while she no doubt experienced pain, it was not so severe as to be disabling. In support of his conclusion, the ALJ noted that it was:

> consistent with the <u>paucity of medical treatment required by the claimant during the period at issue</u> herein as well as with objective evidence establishing that the claimant was <u>fully weight bearing with only intermittent effusion in the right knee</u>.  Despite the claimant's assertions that she had been unable to work since April 7, 2001, <u>she did not seek treatment from Dr. Yannopoulos between April 2000 and November 2001</u>. He was the primary physician for her orthopedic complaints, <u>but he never restricted her activities</u>.  In fact, in April 1998, <u>he had encouraged her to increase her activity level</u>.  There is <u>no indication that any treating or examining physician limited the claimant's activity level</u> prior to the date she was last insured <u>nor was she prescribed any strong pain medication</u>. Considering the nature of the claimant's symptoms, precipitating and aggravating factors, treatments including medication, the claimant's functional restrictions and her daily activities, the undersigned Administrative Law Judge concludes that she retained the residual functional capacity to perform at least light work . . ..

Admin. Rec. at 18–19 (emphasis supplied).  Contrary to claimant's suggestion, there is no requirement that "an administrative law judge must slavishly discuss each <u>Avery</u> factor."  <u>Braley v. Barnhart</u>, 2005 WL 1353371 at *6 (D. Me. June 7, 2005).  Instead, the ALJ must simply "consider the entire case record and give

17

specific reasons for the weight given to the individual's statements."  SSR 96-7p, 1996 WL 374186 at * 4.  Here, the ALJ adequately set forth the reasons for both his credibility determination and his conclusion that, prior to December 31, 2000, claimant retained the RFC to perform light work.

In light of the foregoing, the court cannot conclude that the ALJ erred in making his assessment of claimant's credibility. To be sure, there is substantial evidence in the record that is supportive of claimant's assertion that she suffers from significant degenerative arthritis in her right knee, which causes pain that has limited her activities of daily living. But, there is also substantial evidence in the record to support the ALJ's conclusion that, as of claimant's date last insured, she was not disabled and, instead, remained capable of performing light work.  In such circumstances – when substantial evidence can be marshaled from the record to support either the claimant's position or the Commissioner's decision – this court is obligated to affirm the Commissioner's finding of no disability.  See Tsarelka, 842 F.2d at 535; Rodriguez, 647 F.2d at 222-23.

## Conclusion

No one doubts that claimant suffers from degenerative arthritis in her knees, nor is there any question that her condition is a painful one that will likely force her to undergo knee replacement surgery at some point in the future.  But, the issue before the ALJ in this case was whether claimant's condition was totally disabling when her insured status expired more than five years ago, on December 31, 2000.  Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time prior to the expiration of her insured status.  Both the ALJ's credibility determination and his conclusion that claimant retained the ability to perform her past relevant work (again, as of December 31, 2000) are well-reasoned and supported by substantial evidence in the record.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 7) is denied, and the Commissioner's motion to affirm her decision (document no. 8) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

19

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 2, 2006

cc:  Vicki S. Roundy, Esq.
     David L. Broderick, Esq.